UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WALTER DANIEL, individually and as personal representative of the estate of REBEKAH DANIEL, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CASE NO. 15-5748 RJB <br><br> ORDER ON DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on Defendant United State's Motion to Dismiss. Dkt. 6. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

Plaintiff, individually and on behalf of the estate of his late wife, filed this Federal Tort Claim Act ("FTCA") case against the United States asserting claims for medical negligence, corporate negligence, and wrongful death based on health care provided at U.S. Naval Hospital Bremerton ("NHB") in connection with the death of Lieutenant Rebekah Daniel shortly after she gave birth to a child.

1    The Defendant now moves for dismissal of this case, arguing that the Court does not have

2  subject matter jurisdiction because the United States has sovereign immunity. Dkt. 6. For the

3  reasons set forth below, the motion should be granted.

4    **I.    BACKGROUND FACTS AND PROCEDURAL HISTORY**

5  **A. BACKGROUND FACTS**

6    At the time of her death on March 9, 2014, Lt. Daniel was a commissioned officer on

7  active duty status in the United States Navy. Dkt. 1. She was stationed at NHB as a labor and

8  delivery nurse. *Id.,* at 3. Her husband, the Plaintiff, Walter Daniel, was a Lieutenant Commander

9  in the United States Coast Guard. *Id*.

10    In June of 2013, Lt. Daniel submitted her resignation, indicating that she wished to

11  detach from the Navy in May 2014. Dkt. 6-3, at 3-5. Her resignation was approved, and

12  separation orders were issued with an Estimated Detachment Date of May 2014. *Id.*, at 2 and 9-

13  11. Her separation orders provided that "[w]hen directed by reporting senior, detach May 14."

14  *Id.,* 9. Those orders also specified that separation processing must occur, and "upon completion

15  and when directed detach." *Id.* Prior to her death, Lt. Daniel had not initiated separation

16  processing. Dkt. 6-1. She was receiving her regular pay and benefits, including accumulation of

17  annual (vacation) leave and creditable service toward retirement. *Id.*

18    Lt. Daniel checked into NHB as a patient on March 8, 2014 and went into labor on March

19  9, 2014. Dkt. 1, at 3. She was off duty at the time, and was not serving on a military mission. *Id.*

20  Her pregnancy was considered a low-risk pregnancy. *Id.* She had a healthy baby girl at 3:38 PM

21  by vaginal delivery. *Id.,* at 4. A few minutes later, she began to have postpartum bleeding. *Id.* Lt.

22  Daniel was pronounced dead at 7:34 PM, four hours after she gave birth. *Id.,* at 6.

23

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 2

Plaintiff asserts that Lt. Daniel bled to death because her healthcare team failed to follow specific well-known standards of care for postpartum hemorrhage. Dkt. 1.

NHB is a military hospital that provides care to service members, retirees, their eligible dependents, and some disabled veterans. Dkts. 1, at 7 and 6-1, at 4. It does not provide care to members of the general public. Dkt. 6-1.

**B.  PROCEDURAL HISTORY**

On April 1, 2015, Plaintiff filed an administrative claim with the Defendant. Dkt. 1. Defendant denied the claim on April 23, 2015. *Id.* Plaintiff filed this case on October 15, 2015. *Id.*

**C.  MOTION TO DISMISS, PLAINTIFF'S RESPONSE, AND DEFENDANT'S REPLY**

Defendant moves to dismiss the claims against it for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendant asserts that it enjoys sovereign immunity except to the extent that it consents to be sued. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The FTCA constitutes a partial waiver of this sovereign immunity. 28 U.S.C § 2679(b). Defendant argues that the FTCA is not applicable to this case because the rule announced in *Feres v. United States,* 340 U.S. 135 (1950) bars claims arising out of injuries that are "incident to service" in the military. Dkt. 6.

Defendant argues that because Rebekah Daniel was an active duty service member receiving care at a military hospital when she died, the analogous cases, the Ninth Circuit's four-factor test, and the policy rationales underlying *Feres* support the application of *Feres* in this case. Dkt. 6.

In response, Plaintiff argues that *Feres* should not apply to medical malpractice cases, particularly those involving pregnant service members, because cases which apply the *Feres* bar

1   to medical malpractice claims "cannot be reconciled with the analysis adopted by the Ninth

2   Circuit." Dkt. 8. Plaintiff further contends that *Feres* does not apply to this case because,

3   although Ninth Circuit cases are arguably inconsistent, "the Ninth Circuit's analysis of the

4   rationales and factors to be considered" support denial of Defendant's motion. *Id*. Plaintiff points

5   out that although this Court is bound by Ninth Circuit and United States Supreme Court

6   precedent, "the Ninth Circuit sitting en banc has not considered the *Feres* rule in the present

7   context." *Id*. Plaintiff preserves an argument that *Feres* should be reversed or modified, while

8   recognizing that such an action can only be taken by the appellate courts. *Id*.

9         Defendant filed a reply in support of the Motion to Dismiss. Dkt. 10. In it, Defendant

10   disputes Plaintiff's assertion that *Feres* should not apply to medical malpractice claims by

11   pointing out that both the Ninth Circuit and the Supreme Court have applied *Feres* in such cases,

12   and that those cases have upheld the validity of applying the *Feres* doctrine. *Id*. Defendant also

13   argues that the four-factor test and policy rationales support application of *Feres* under these

14   circumstances. *Id*.

15                              **II.   <u>DISCUSSION</u>**

16   **A.  STANDARD FOR MOTION TO DISMISS**

17         A complaint must be dismissed under Fed.R.Civ.P.12(b)(1) if, considering the factual

18   allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the

19   Constitution, laws, or treaties of the United States, or does not fall within one of the other

20   enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or

21   controversy within the meaning of the Constitution; or (3) is not one described by any

22   jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v.*

23   *Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331 (federal

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 4

1  question jurisdiction) and 1346 (United States as a defendant). When considering a motion to

2  dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may

3  review any evidence to resolve factual disputes concerning the existence of jurisdiction.

4  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052

5  (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983). A federal court

6  is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise. *Kokkonen v.*

7  *Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated*

8  *Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Therefore, plaintiff bears the burden of proving the

9  existence of subject matter jurisdiction. *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co.,*

10  *Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

11  **B.  SOVEREIGN IMMUNITY AND THE FTCA**

12  The United States, as sovereign, is immune from suit unless it consents to be sued. *See*

13  *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Cato v. United States*, 70 F.3d 1103, 1107

14  (9th Cir. 1995). If a claim does not fall squarely within the strict terms of a waiver of sovereign

15  immunity, a district court is without subject matter jurisdiction. *See, e.g.*, *Mundy v. United States*,

16  983 F.2d 950, 952 (9th Cir. 1993).

17  The FTCA is the exclusive remedy for state law torts committed by federal employees within

18  the scope of their employment. 28 U.S.C. § 2679(b)(1). The FTCA is a limited waiver of

19  sovereign immunity, rendering the United States liable for certain torts of federal employees. *See*

20  28 U.S.C. § 1346(b). The FTCA provides,

21        Subject to the provisions of chapter 171 of this title, the district courts, . . ., shall
      have exclusive jurisdiction of civil actions on claims against the United States, for

22        money damages, accruing on and after January 1, 1945, for injury or loss of
      property, or personal injury or death caused by the negligent or wrongful act or

23        omission of any employee of the Government while acting within the scope of his
      office or employment, under circumstances where the United States, if a private

24

person, would be liable to the claimant in accordance with the law of the place
where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The statute specifically excludes military service related injuries for

claims arising out of "combatant activities," 28 U.S.C. § 2680(j), and claims arising in foreign

countries, 28 U.S.C. § 2680(j).

The Supreme Court significantly broadened the "combatant activities" exception in *Feres v.*

*United States,* 340 U.S. 135 (1950). *See also Costo v. United States,* 248 F.3d 863, 866 (9th Cir.

2001). The *Feres* court held that FTCA waiver of sovereign immunity does not apply to the

claims "for injuries to servicemen where the injuries arise out of or are incident to service." *Id.*,

at 146. This doctrine is referred to as the *Feres* doctrine. *Costo*, at 866. The *Feres* doctrine is

based on three policy rationales:

> (1) the distinctively federal nature of the relationship between the government and
> members of its armed forces, which argues against subjecting the government to
> liability based on the fortuity of the situs of the injury; (2) the availability of
> alternative compensation systems; and (3) the fear of damaging the military
> disciplinary structure.

*Ritchie v. United States*, 733 F.3d 871, 874 (9th Cir. 2013)(quoting *Stencel Aero Engineering*

*Corp. v. United States*, 431 U.S. 666, 671-72 (1977)).

For the past sixty-six years, the *Feres* doctrine and its policy considerations have "been

criticized by 'countless courts and commentators' across the jurisprudential spectrum." *Ritchie,*

at 874; *Costo*, at 866. (9th Cir. 2013). "However, neither Congress nor the Supreme Court has

seen fit to reverse course." *Ritchie,* at 874. Due to the heavy criticism of the doctrine and its

policy considerations, the Ninth Circuit applies a four factor test to determine whether a service

member's injury is "incident to service." *Costo*, at 866. The four factors are:

> (1) the place where the negligent act occurred, (2) the duty status of the plaintiff
> when the negligent act occurred, (3) the benefits accruing to the plaintiff because

of the plaintiff's status as a service member, and (4) the nature of the plaintiff's activities at the time the negligent act occurred.

*Costo*, at 867 (*internal citation omitted*). None of these factors are dispositive. *McConnell v. United States*, 478 F.3d 1092, 1095 (9th Cir. 2007) (*internal citation omitted*). Rather than seizing on any particular combination of factors, the focus is on the totality of the circumstances. *Id*.

Additionally, because the Ninth Circuit has "reached the unhappy conclusion that the cases applying the *Feres* doctrine are irreconcilable," a "comparison of fact patterns to outcomes in cases that have applied the *Feres* doctrine is the most appropriate way to resolve *Feres* doctrine cases." *Schoenfeld v. Quamme*, 492 F.3d 1016, 1019 (9th Cir. 2007)(*internal quotation marks omitted*). Therefore, courts "examine the Ninth Circuit cases that are most factually analogous to the case at bar to determine whether the *Feres* doctrine bars [Plaintiff Daniel's] suit." *Id.,* at 1019-1020.

### C.  APPLICATION OF *FERES* DOCTERINE

For clarity, the Ninth Circuit's most favored method of *Feres* analysis (analogous cases) will be considered first, followed by the four-factor test established by the Ninth Circuit, then by the disfavored policy rationales.

1. <u>Other Ninth Circuit Cases</u>

The Ninth Circuit compares "fact patterns to outcomes in cases that have applied the *Feres* doctrine." *Costo*, at 867. Similar medical malpractice claims arising out of injury to active duty service members from care received at a military hospital have been found to be barred by *Feres. Persons v. United States,* 925 F.2d 292 (9th Cir. 1991); *Atkinson v. United States,* 825 F.2d 202 (9th Cir. 1987); *Veillette v. United States,* 615 F.2d 505 (9th Cir. 1980).

1    In *Persons*, the court found that although the service member was off-duty, he "enjoyed

2    the use of the naval hospital solely by virtue of his status as a serviceman and the doctors who

3    treated him were subject to military orders." *Persons,* at 296. The *Persons* court noted, "courts

4    have consistently accorded these factors decisive weight in determining whether activity was

5    'incident to service,'" and so, it held that medical malpractice claims against the U.S. were

6    barred by *Feres*. *Id.* That court found that the *Feres* doctrine barred negligence claims, and that

7    "this is especially true in cases alleging medical malpractice in a military facility." *Id.*

8    The *Atkinson* court decided that although a medical malpractice claim arising out of

9    negligent prenatal care did not support application of *Feres* according to the third *Feres*

10   rationale, military discipline, the other two *Feres* rationales supported its application. *Atkinson*,

11   at 206. It held the *Feres* doctrine barred suit by a service woman asserting that negligent medical

12   treatment at a military healthcare facility caused her child to be stillborn.  *Id.*

13   In *Veillette*, the Ninth Circuit found that since the service member's death was

14   attributable to the negligence of Navy hospital personnel, the injury was "incident to service"

15   even though civilians also had access to that facility. *Veillette*, at 507. The *Veillette* court held

16   that negligence claims against employees of military hospitals are barred by the *Feres* doctrine.

17   *Id.*

18   The case law supports the application of the *Feres* doctrine to medical malpractice cases

19   brought by service members, or their heirs, against military hospital personnel. Lt. Daniel's care

20   should be regarded as "incident to service," and under binding Ninth Circuit precedent, her

21   claims are barred by *Feres*.

22       2.   Ninth Circuit's Four Factor Test

23           a.   *The Place where the Negligent Act Occurred*

24

In evaluating this factor, courts consider whether the location is open to the public. *See, e.g., Dreier v. United States,* 106 F.3d 844. 853 (9th Cir. 1996). In this case, treatment took place at NHB, a Naval medical facility. Dkt. 6-1. Only active duty service members and their dependents may receive their care at that facility. *Id.* at 11. This factor weighs in favor of a *Feres* bar. However, this factor is not determinative, and precedent indicates that "where the nature of the plaintiff's activities at the time of injury are only minimally related to [her] military service, we have declined to give much weight to this factor." *Schoenfeld,* at 1023. Consequently, the fourth factor may have an effect on analysis of the first factor.

  b. *Lt. Daniel's Duty Status*

Lt. Daniel was an active duty service member at the time of treatment, and was not on leave or furlough. Dkt 6-1 at 8. This factor also weighs in favor of a *Feres* bar. However, if the service member is not "engaged in military activity" at the time of injury, "duty status is at best marginally relevant to the *Feres* analysis." *Schoenfeld,* at 1023. "The important question is whether the service member on active duty status was engaging in an activity that is related in some relevant way to his military duties." *Johnson v. United States,* 704 F.2d 1431, 1438 (9th Cir. 1983). Again, to determine whether this factor will be strongly considered, the nature of the service member's activity under the fourth factor is relevant.

  c. *Benefits Accruing to Lt. Daniel because of her Status as a Service Member*

"Benefits," under the third factor, can encompass benefits received both before and after injury, including the benefit of being able to participate in the activity that led to injury and any compensation arising out of that injury. *Schoenfeld,* at 1024. Lt. Daniel received her care at NHB because of her status as a service member. Additionally, her family received benefits following her death because she was on active duty status. This factor weighs in favor of applying the

1    *Feres* bar. It is not dispositive, however, as the payment of benefits alone does not preclude a

2    service member from recovery under the FTCA. *See, e.g., Schoenfeld* at 1024.

3              d.   *Nature of Lt. Daniel's Activities at the Time the Negligent Act Occurred*

4         In analyzing this fourth factor, courts consider whether the activities of the service

5    member are "meaningfully distinguishable from those of a civilian." *Schoenfeld*, at 1025.

6    Although a pregnant service woman would expect to receive care at a military hospital that is

7    substantially similar to the care a civilian would receive at a civilian hospital, it is relevant that

8    the service woman is at that particular military facility being treated by military personnel

9    because of her status in the military. *See, e.g., Persons,* at 296. In its analysis of the fourth factor

10   in *Jackson v. United States,* the Ninth Circuit stated as follows: "[O]btaining medical care is

11   neither inherently military nor inherently civilian. However, we have held that *Feres* bars suits

12   for medical malpractice even when the treatment was not for military-related injuries." *Jackson*

13   *v. United States*, 110 F.3d 1484 (9th Cir. 1997). This factor also weighs in favor of applying

14   *Feres*.

15        3.   *Feres* Policy Considerations

16        The *Feres* doctrine bars recovery under the FTCA for injuries that are "incident to

17   service" based on three policy rationales:

18        (1) the distinctively federal nature of the relationship between the government and
     members of its armed forces, which argues against subjecting the government to liability
19        based on the fortuity of the situs of the injury; (2) the availability of alternative
     compensation systems; and (3) the fear of damaging the military disciplinary structure.
20
     *Ritchie,* at 874. The Ninth Circuit has "shied away from attempts to apply these policy
21
     rationales." *Costo,* at 867. They are broadly encompassed by the four-factor test that the Ninth
22
     Circuit favors in making determinations on the applicability of the *Feres* bar.
23

24

1    The first policy consideration, the situs of the injury, is intended to offer some uniformity

2    in light of the global nature of U.S. military operations. *United States v. Johnson*, 481 U.S. 681

3    (1987). The idea is that active duty service men and women will be treated the same regardless

4    of where the alleged negligence took place. Because Lt. Daniel was an active duty service

5    woman being treated at a military facility, this policy consideration favors application of *Feres*.

6    However, as discussed in relation to the first factor of the Ninth Circuit's test, military status and

7    location of alleged negligence may have diminished relevance in relation to other considerations.

8    *See, e.g., Schoenfeld,* at 1023.

9    The second consideration recognizes the existence of "generous statutory disability and

10   death benefits" available to service members. *Johnson*, 481 at 689. Lt. Daniel's heirs have

11   received, and will continue to receive, these benefits. Dkt. 6-1. As discussed under the third

12   factor of the Ninth Circuit's test, this policy consideration favors application of the *Feres* bar, but

13   does not necessarily preclude recovery under the FTCA.

14   The third policy, military discipline, centers on "the need to avoid the inquiry into

15   military orders," and is specifically concerned with officers testifying in court with regard to the

16   actions and decisions of other officers. *Id*. at 876. The goal is to limit involvement by the

17   judiciary into "sensitive military affairs at the expense of military discipline and effectiveness."

18   *Johnson*, at 690 (*internal citations omitted).* In evaluating this rationale, the Ninth Circuit has

19   distinguished the doctor-patient relationship in medical malpractice cases from the military

20   supervisor-subordinate relationship in other FTCA claims. *Id.* at 876-77. Courts also focus on the

21   status of the alleged victim rather than the military status of the alleged tortfeasor in *Feres* cases.

22   *Johnson,* at 686. The facts of this case do not involve inquiry into the military orders of a

23   superior to a subordinate, but rather into the treatment given by a doctor to a patient of the kind

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 11

1 that the doctor might also provide to a civilian. Furthermore, Lt. Daniel was not under orders at

2 the time of her treatment, so any impact on military discipline would be remote. This

3 consideration weighs against application of *Feres*.

4     *Feres*, and the policy rationales for the *Feres* bar, have resulted in much criticism and

5 inconsistency.  The third rationale, which pertains to military discipline, is emphasized as the

6 most important of the three, and military discipline is only minimally impacted by this case. *See,*

7 *e.g., Ritchie,* at 874. However, the other two *Feres* rationales counsel that the Plaintiff's claims

8 are barred.

9     **D.  CONCLUSION**

10     The Ninth Circuit has relied on two methods – analogous case analysis and the four-

11 factor test – to alleviate some of the inconsistency resulting from application of the *Feres* policy

12 considerations. Both of these methods favor application of the *Feres* doctrine.  Absent

13 intervening controlling authority, the undersigned is bound by the decisions of the Ninth Circuit

14 and the Supreme Court. "[U]nless and until Congress or the Supreme Court choose to confine the

15 unfairness and irrationality that *Feres* has bred," *Ritchie,* at 878, the doctrine applies here.

16 Regretfully, this suit is barred by *Feres*. Defendant's motion to dismiss should be granted.

17                     **III.    ORDER**

18     Therefore, it is hereby **ORDERED** that:

19     Defendant United States' Motion to Dismiss (Dkt. 6) **IS GRANTED**.  This case is

20 **CLOSED**.

21     The Clerk is directed to send uncertified copies of this Order to all counsel of record and

22 to any party appearing *pro se* at said party's last known address.

23

24

1    Dated this 21st day of January, 2016.

2

3

4    ROBERT J. BRYAN
     United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS- 13